## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |  |
|---|---|---|
| **ALLURE ENERGY, INC.,** | § | |
| **A Delaware corporation,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 1:15-CV-00079** |
| **v.** | § | |
| | § | **JURY TRIAL** |
| **HONEYWELL INTERNATIONAL,** | § | |
| **INC., a Delaware corporation,** | § | |
| | § | |
| **Defendant.** | § | |

## COMPLAINT

Plaintiff Allure Energy, Inc. ("Allure Energy" or "Plaintiff") files this Complaint for patent infringement and false advertising against Defendant Honeywell International, Inc. ("Honeywell" or "Defendant"), and alleges as follows:

## NATURE OF ACTION

1.  Allure Energy is an Austin-based company that designs, manufactures, and sells home environment and energy products.  It is a leading innovator of "smart" thermostats and related technologies.  Allure Energy has received accolades and awards for its advancements in these energy-saving technologies.  It was the 2013 Good Design Award winner, the 2013 Spark Product Design Award Finalist, and a 2014 International CES Innovations Design and Engineering Awards Honoree.

2.  In particular, Allure Energy innovated a cutting-edge smart thermostat called Eversense®.  Eversense® uses proximity control and geofencing technology allowing the thermostat to detect whether a user is home or away, and adapting to a user's daily schedule by,

1

for example, adjusting the temperature settings in the home based on the user's proximity.   A visual depiction of Allure Energy's Eversense® product is set forth below:



3.      Allure Energy not only has received accolades from industry, but has been awarded over 20 patents directed to various inventions in the field of learning thermostats and proximity detection, with more than another 30 patent applications pending.

4.      Allure Energy is a small, Texas-based company.  It is able to compete with much larger companies only because of its cutting-edge technology—its innovations and technological advancements help level the playing field.  Its technology and reputation for innovation allow Allure Energy to serve well-regarded retailers throughout the United States which offer its Eversense® product.  Allure Energy depends on patent protection to effectively compete and build a business.

5.      In January 2012, Allure had a booth at the Distributech Conference and Exhibition in San Antonio, Texas.  Three attendees from Honeywell, including a marketing executive and the Director of Energy Management Systems, Home Comfort and Energy Systems, Environmental and Combustion Control, stopped by Allure's booth and expressed interest in Allure Energy's Eversense® product.  Honeywell at that time did not have a

competing smart thermostat on the market.  Allure had one of its thermostats in the booth, and did a demonstration, including Allure Energy's geofencing and proximity control technology. Following the conference, Allure's Vice-President of Business Development emailed the Honeywell representatives, thanking them for their discussion and expressing an interest in pursuing a business relationship.

6.      In August 2013, Honeywell pre-ordered three Eversense® thermostats in advance of the formal release date.  Given Honeywell's interest in Allure's company and its product, Allure again reached out to Honeywell to explore a business relationship.  Allure shipped the thermostats from its headquarters in Austin to Honeywell in November, when Eversense® thermostats were offered for sale to the public.  Honeywell received the thermostats it had ordered, but did not respond to Allure Energy's overture.  Seven months later, in June 2014, Honeywell introduced its own proximity enabled thermostat called Lyric™.  Honeywell's new Lyric™ thermostat infringes key Allure Energy patents, and constitutes a brazen appropriation of the very technology demonstrated to Honeywell in its January 2012 meeting with Allure Energy.

7.      Honeywell's newly-launched product used the same type of technology offered in Allure Energy's Eversense® product, including proximity detection and geofencing.  Honeywell now is offering its infringing product through its distribution channel, which includes 90,000 contractors and various retail outlets.  To make matters worse, Honeywell advertises its product using marketing that mirrors Allure Energy's marketing.  Honeywell also claims that Lyric™ is the only thermostat to use geofencing technology to track smartphones -- false advertising that serves to damage Allure Energy's credibility in the marketplace and unfairly promote Honeywell's product.

8.      In short, Honeywell has taken Allure Energy's technology and is promoting it as its own.  Without protection of Allure Energy's intellectual property, Honeywell's superior resources, financial might, and massive worldwide distribution chain will overpower Allure Energy's ability to compete in the marketplace.

9.      Allure Energy believes that fair and legitimate competition benefits consumers and the industry as a whole.  But small companies -- the largest employers in the U.S. -- are at risk if their innovations can be taken in disregard of patent and other intellectual rights and then be falsely promoted by companies with the wealth and resources to dominate the market through unfair and deceptive competition.  This lawsuit is about Allure Energy's very survival as a commercial enterprise and its ability to compete in the sale of the remarkable products it innovated.

10.     Allure Energy brings this action for patent infringement under 35 U.S.C. § 1, et seq. and false advertising under the Lanham Act, 15 U.S.C. § 1125(a).  Allure Energy seeks preliminary and permanent injunctive relief, corrective advertising, and damages to redress Honeywell's infringement of Allure Energy's patent rights and Honeywell's false advertising.

## JURISDICTION AND VENUE

11.     This action arises under the patent laws of the United States, 35 U.S.C. §1 et seq. and the Lanham Act, 15 U.S.C. § 1125(a).

12.     This Court has subject matter jurisdiction over Allure's claims pursuant to 28 U.S.C. §1331 and §1338(a) because this is a civil action for patent infringement and arises under the patent laws of the United States and under the Lanham Act.

13.     Personal jurisdiction exists generally over the Defendant because it has sufficient minimum contacts with the forum as a result of business conducted within the State of Texas and within the Western District of Texas.  Personal jurisdiction also exists specifically over

4

Defendant because it, directly or through subsidiaries or intermediaries, uses, offers for sale, imports, advertises, makes available, and/or markets products within the State of Texas, and more particularly, within the Western District of Texas, that infringe the patents-in-suit, as described herein.

14.     Honeywell is subject to personal jurisdiction in this District by virtue of, *inter alia*, the fact that (i) it conducts business activity within the State of Texas and in this District through (a) the sale of its Lyric™ thermostat at Lowe's, Home Depot, and Best Buy retail stores in this District and through Honeywell certified contractors in this District, and (b) support of its Lyric™ thermostat through its relationship with certified contractors in this District; (ii) it has substantial and continuous contacts within the State of Texas, including in this District; and (iii) it has committed acts of patent infringement in the State of Texas, including in this District.

15.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b), (c) and §1400(b).

## PARTIES AND BACKGROUND

A.     **Plaintiff Allure Energy**

16.     Plaintiff Allure Energy is a Delaware corporation having a principal place of business at 901 So. Mopac Expressway, Bldg II, Suite 100, Austin, Texas 78746.

17.     Allure Energy was founded in 2009 by Kevin Imes, a veteran of the U.S. Armed Services with an undergraduate degree in Electrical Engineering from the University of Texas at Austin and an advanced degree in business from the McCombs School of Business.  Mr. Imes, who resides in Texas, is a named inventor of the patents at issue in this case, as well as many other patents and patent applications owned by Allure Energy.

18.     Allure Energy is a smart technology provider that develops leading-edge smart solutions that enhance a user's experience with minimal effort.  Allure Energy is in the business

of designing, manufacturing, and selling home environment and energy management products, including smart thermostats, through its website www.allure-energy.com.

19.     For over five years, Allure has successfully grown to more than fifteen Texas-based employees and contractors.  Allure's growth is due in no small part to its significant investments in both research and development, and the protection of its intellectual property rights.

20.     Allure has invested substantial sums of money designing and developing its home environment and energy management products, and it has already been awarded twenty-one U.S. patents, with many other U.S. and foreign patent applications pending that are directed toward these developments.

21.     Allure is the owner by assignment of United States Patent No. 8,626,344 ("the '344 Patent"), which issued on January 7, 2014, for an invention entitled "Energy Management System and Method."

22.     A true and accurate copy the '344 Patent is attached hereto as Exhibit A.

23.     Allure is the owner by assignment of United States Patent No. 8,457,797 ("the '797 Patent"), which issued on June 4, 2013, for an invention entitled "Energy Management System and Method."  (Collectively, the '344 and '797 Patents are referred to as the "patents-in-suit").

24.     A true and accurate copy of the '797 Patent is attached hereto as Exhibit B.

25.     Allure has developed and promoted a new smart thermostat that has been commercially introduced under the name EverSense®.

26.     The Allure EverSense® smart thermostat is assembled domestically in Texas, and is available for purchase on Allure's website and at major retailers, both in stores and on websites.

27.     The Allure EverSense® smart thermostat also is manufactured with components purchased from various companies with operations and facilities in Texas, including semiconductors and electronic components companies.

28.     The U.S. smart technologies industry is expected to grow to a $57B industry by 2016, and other sources forecast that nearly half of U.S. homes will replace traditional thermostats with smart thermostats having remote access and automatic controls.

**B.     Defendant Honeywell**

29.     Defendant Honeywell is a Delaware corporation with its principal place of business in Morristown, New Jersey.

30.     Honeywell is engaged, directly or indirectly, in the manufacture, sale, and offer for sale of a smart thermostat system under the name Lyric™.  Honeywell's Lyric™ smart thermostat system competes directly with the Allure EverSense® smart thermostat.

31.     The division of Honeywell that oversees the development and implementation of thermostats for homes and businesses in the United States is located in Golden Valley, Minnesota.

32.     Upon information and belief, the Lyric™ smart thermostat is manufactured in Mexico and imported into the U.S. by Honeywell.

33.     According to an independent study done by Navigant Research, Honeywell is the leader in the global thermostat market due to its ability to use its dominant brand to its advantage.

34.     According to Honeywell's website, lyric.honeywell.com/get-lyric/, the Lyric™ smart thermostat is offered for sale and sold throughout the United States and Canada, including in this District, through various Honeywell certified contractors.

35.     Honeywell's Lyric™ smart thermostat also is available for purchase at various Lowe's, Home Depot, and Best Buy retail stores in this District.

**C.     Honeywell's Improper Use of Allure Energy's Intellectual Property**

36.     Prior to January 2012, Honeywell had not offered for sale a thermostat using geofencing and proximity detection.

37.     Prior to January 2012, Honeywell had not invented a product that included geofencing and proximity detection.

38.     Prior to January 2012, Honeywell had not invented a thermostat product that used geofencing and proximity detection to regulate temperature settings at a site.

39.     Prior to January 2012, Honeywell had not invented a product that included each and every limitation of claim 1 of the '344 patent.

40.     Prior to January 2012, Honeywell had not invented a product that included each and every limitation of claim 1 of the '797 patent.

41.     In January 2012, Honeywell and Allure Energy attended the DistribuTECH tradeshow in San Antonio, Texas, a tradeshow focused on promoting the latest innovations for the utility industry.

42.     At the tradeshow, Allure Energy representatives provided Honeywell representatives a demonstration of EverSense® and its geofencing/proximity control technology.

43.     Honeywell representatives indicated that they liked the proximity aspect of the EverSense® product and indicated an interest in the companies working together.

44. Allure informed Honeywell of its position regarding its intellectual property rights in the EverSense® product.

45. Subsequently, a representative from Honeywell purchased three EverSense® thermostats.

46. Honeywell refused to respond to Allure Energy's attempts to reach representatives of Honeywell to discuss how the two companies could work together, both following the demonstration at DistribuTECH, and following Honeywell's pre-order of EverSense® thermostats in August 2013.

47. In or about July 2014, Honeywell introduced its own proximity-enabled, geofencing thermostat called the Lyric™.

48. On information and belief, Honeywell has infringed, and continues to infringe, the patents-in-suit.

49. In addition, on information and belief, Honeywell indirectly infringes the patents-in-suit.  Honeywell induces distributers, consumers, and end-users to directly infringe the patents-in-suit by selling or using the Lyric™ system.

50. Honeywell's marketing, sales, and customer support materials instruct customers to use infringing features of its Lyric™ system in an infringing manner, including the use of proximity-enabled, geofencing features.

51. For example, Honeywell's website provides customers, potential customers, and other end-users with product specifications, FAQ answers, online videos, and other marketing materials for the Lyric™ system that describe and promote its infringing features and instruct customers to use them in an infringing manner.

52.     Honeywell has also published video demonstrations and instructional materials on YouTube, which tout the Lyric™ system's infringing features and instruct end-users on how to use the Lyric™ system in an infringing manner.

53.     On information and belief, Honeywell also provides verbal and written instructions, including sales support, technical knowledge and support, to its distributors and customers that intentionally aid, assist, and encourage infringement.

54.     Honeywell touted the proximity-enabled, geofencing features of the Lyric™ thermostat as being innovative.

55.     The Lyric™ name used by Honeywell suggests the use of music, a feature of the EverSense® thermostat.

56.     Honeywell indicated that it would begin sales of Lyric™ through its distribution channel, which includes 90,000 contractors and various retail outlets.

57.     Honeywell's Lyric™ product is sold in some of the very same retail outlets as Allure Energy's EverSense® product, restricting Allure Energy's access to distribution channels as a direct result of the introduction of Lyric™.

58.     In November 2014, Honeywell upon information and belief launched an advertising campaign stating that Lyric™ is the only thermostat in the world that offers home and away control using proximity control.  Honeywell claimed that its Lyric™ product is:

> the only thermostat to use geofencing technology to track your smartphone and start to warm things up when it sees you are on your way home.

(the "Innovation Claim").  The advertisement containing the Innovation Claim is attached as Exhibit C hereto.  Exhibit C was run in Delta Sky Magazine and, upon information and belief, in other publications and/or media.

59.     The Lyric™ product was not, at the time the Innovative Claim was used, the only thermostat to use geofencing technology to track the user's smartphone and to adjust the thermostat while the user is on the way home.

60.     The Innovation Claim is factually false.

## COUNT I

## INFRINGEMENT – '344 PATENT

61.     Allure Energy hereby incorporates the preceding paragraphs of its Complaint as though set forth fully herein.

62.     The '344 Patent was duly and legally issued by the United States Patent and Trademark Office on January 7, 2014 after full and fair examination.  Allure Energy is assignee of all right, title, and interest in and to the '344 Patent.

63.     The '344 Patent is valid and enforceable.

64.     Allure Energy owns the '344 Patent by assignment.

65.     Honeywell has directly and/or indirectly infringed (by inducement and/or contributory infringement), and is continuing to infringe, directly and/or indirectly, one or more claims of the '344 Patent in this District or otherwise within the United States by making, using, selling, and/or offering for sale, or importing into the United States without authority its Lyric™ thermostat system.

66.     Upon information and belief, Honeywell will continue to infringe the '344 Patent unless and until it is enjoined by this Court.

67.     As a direct and proximate consequence of the acts and practices of Honeywell in directly and/or indirectly infringing one or more claims of the '344 Patent, Allure Energy has suffered irreparable injury to its business and property rights.  That irreparable injury will continue unless enjoined, and there is no adequate remedy at law.

11

68.     Allure Energy is entitled to injunctive relief under 35 U.S.C. § 283.

69.     As a direct and proximate consequence of the acts and practices of Honeywell in directly and/or indirectly infringing one or more claims of the '344 Patent, Allure Energy has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284 in an amount to be determined at trial.

70.     Upon information and belief, Honeywell's past and continuing infringement of the '344 Patent has been deliberate and willful warranting an award of enhanced damages.

71.     This is an exceptional case warranting an award of attorney's fees to Allure Energy under 35 U.S.C. § 285.

### COUNT II
### INFRINGEMENT – '797 PATENT

72.     Allure Energy hereby incorporates the preceding paragraphs of its Complaint as though set forth fully herein.

73.     The '797 Patent was duly and legally issued by the United States Patent and Trademark Office on June 4, 2013 after full and fair examination.  Allure Energy is assignee of all right, title, and interest in and to the '797 Patent.

74.     The '797 Patent is valid and enforceable.

75.     Allure Energy owns the '797 Patent by assignment.

76.     Honeywell has directly and/or indirectly infringed (by inducement and/or contributory infringement), and is continuing to infringe, directly and/or indirectly, one or more claims of the '797 Patent in this District or otherwise within the United States by making, using, selling, and/or offering for sale, or importing into the United States without authority its Lyric™ thermostat system.

77.     Upon information and belief, Honeywell will continue to infringe the '797 Patent unless and until it is enjoined by this Court.

78.     As a direct and proximate consequence of the acts and practices of Honeywell in directly and/or indirectly infringing one or more claims of the '797 Patent, Allure Energy has suffered irreparable injury to its business and property rights.  That irreparable injury will continue unless enjoined, and there is no adequate remedy at law.

79.     Allure Energy is entitled to injunctive relief under 35 U.S.C. § 283.

80.     As a direct and proximate consequence of the acts and practices of Honeywell in directly and/or indirectly infringing one or more claims of the '797 Patent, Allure Energy has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284 in an amount to be determined at trial.

81.     Upon information and belief, Honeywell's past and continuing infringement of the '797 Patent has been deliberate and willful warranting an award of enhanced damages.

82.     This is an exceptional case warranting an award of attorney's fees to Allure Energy under 35 U.S.C. § 285.

## COUNT III
## FALSE ADVERTISING

83.     Allure Energy hereby incorporates the preceding paragraphs of its Complaint as though set forth fully herein.

84.     Honeywell's Innovation Claim is false, deceptive, and/or misleading.

85.     Honeywell's Innovation Claim constitutes commercial advertising and/or promotion and is used in interstate commerce.

86.     Honeywell's Innovation Claim has the capacity to deceive customers, is material, and is likely to influence purchasing decisions.

87.     Honeywell's Innovation Claim violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

88.     Honeywell's Innovation Claim has caused and will continue to cause irreparable harm to Allure Energy unless and until it is enjoined by the Court.   Allure Energy has no adequate remedy at law.

89.     As a direct and proximate result of the Innovation Claim, Allure Energy has suffered damages in an amount to be determined by the trier of fact.

90.     Because Honeywell's actions have been willful, Allure Energy is entitled to treble its actual damages or Honeywell's profits, whichever is greater, and to an award of costs, and this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## PRAYER FOR RELIEF

Plaintiff Allure prays for the following relief:

A.     A Judgment that Defendant has infringed, directly and indirectly, one or more claims of the '344 Patent.

B.     A Judgment that Defendant has infringed, directly and indirectly, one or more claims of the '797 Patent.

C.     A Judgment that Defendant has engaged in false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

D.     An Order enjoining, preliminarily and thereafter permanently, Defendant, its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with it, from:

        1.     infringing directly or indirectly the '344 Patent;

        2.     infringing directly or indirectly the '797 Patent;

3.      using the advertising and promotional material attached as Exhibit C to the Complaint or materials substantially similar thereto;

4.      Stating or implying in commercial advertising or promotion, including through its sales personnel, that Lyric™ is, or other Honeywell products are, the only products to use geofencing technology, or using a materially-similar advertising statement.

E.      An Order directing Defendant, pursuant to 15 U.S.C. § 1116(a), to file with the Court and serve on Allure Energy within thirty days after entry of the injunction a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

F.      A judgment and order requiring Defendant to pay Allure Energy's damages under 35 U.S.C. § 284, enhanced damages for willful infringement, and supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting as needed.

G.      A declaration that this is an exceptional case pursuant to 35 U.S.C. § 285 and an award of Plaintiff's attorneys fees;

H.      In the alternative, in the event injunctive relief is not granted as requested by Allure Energy, an award of a compulsory future royalty;

I.      An award of Defendant's profits and/or Allure Energy's damages from Defendant's false and misleading advertising in an amount to be determined by the trier of fact and increased as provided by applicable law due to Defendant's willful violation of the law.

J.      A declaration that this is an exceptional case under 15 U.S.C. §1117(a), and that Allure Energy therefore is entitled to an award of its attorneys' fees and costs.

K.      An award of all costs of this action;

L.      Pre-judgment and post-judgment interest to the maximum rate allowed by law; and

M.      Such other and further relief as the Court deems Allure may be entitled to in law and equity.

## **JURY DEMAND**

Plaintiff hereby demands that all issues be determined by a jury.


Dated:          January 29, 2015



                              Respectfully submitted,



                              **McKool Smith, P.C.**

                              /s/ Kat Li
                              Douglas A. Cawley
                                 (Texas Bar No. 04035500)
                              MCKOOL SMITH, P.C.
                              300 Crescent Court
                              Suite 1500
                              Dallas, TX 75201
                              Tel: (214) 978-4000
                              Fax: (214) 978-4044
                              dcawley@mckoolsmith.com

                              Kat Li
                                 (Texas Bar No. 24070142)
                              MCKOOL SMITH, P.C.
                              300 W. 6th Street
                              Suite 1700
                              Austin, TX 78701
                              Tel: (512) 692-8744
                              Fax: (512) 692-8744
                              kli@mckoolsmith.com

Courtland L. Reichman
  (California Bar No. 268873)
  (*pro hac vice* application pending)
Bahrad A. Sokhansanj
  (California Bar No. 285185)
  (*pro hac vice* application pending)
MCKOOL SMITH, P.C.
255 Shoreline Dr.
Suite 510
Redwood Shores, CA 94065
Tel: (650) 394-1400
Fax: (650) 394-1422
creichman@mckoolsmith.com
bsokhansanj@mckoolsmith.com

John S. Artz
  (Michigan Bar No. P48578)
  (*pro hac vice* application pending)
DICKINSON WRIGHT PLLC
2600 West Big Beaver Road
Suite 300
Troy, Michigan 48084-3312
Tel: (248) 433-7200
Fax: (248) 433-7274
jsartz@dickinsonwright.com

Michelle L. Alamo
  (Michigan Bar No. P60684)
  (*pro hac vice* application pending)
DICKINSON WRIGHT PLLC
500 Woodward Avenue
Suite 4000
Detroit, Michigan 48226
Tel: (313) 223-3500
Fax: (313) 223-3598
malamo@dickinsonwright.com

**ATTORNEYS FOR PLAINTIFF
ALLURE ENERGY, INC.**